WINSTON HAYLES,

    Plaintiff,

v.

CIVIL ACTION NO.: CV610-031

DON JARRIEL; TARMARSHE
SMITH; KAREN DEKLE; C. HOWARD;
and BARRY SMITH, M.D.,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983. Defendants Smith and Dekle ("Defendants") filed a Motion for Summary Judgment. (Doc. No. 60). Plaintiff filed a Response, and Defendants filed a Reply. (Doc. Nos. 71, 72). For the following reasons, Defendants' Motion for Summary Judgment should be **DENIED**.

## STATEMENT OF THE CASE

On November 10, 2009, Defendants were on assigned duty at the E-Building at Georgia State Prison. Inmates at the prison were in the process of putting down floor stripper in Plaintiff's dorm. The parties dispute whether sufficient ventilation was available during the stripping procedure. Plaintiff complained of chest pains and breathing difficulty, and requested medical attention. Defendants state that, before taking Plaintiff to medical, they strip-searched him and handcuffed him behind is back in a manner pursuant to procedural requirements. Defendant Smith asserts that, while he

was escorting Plaintiff to medical, Plaintiff made attempts to pull away from him. Defendant Smith claims he verbally told Plaintiff to stop pulling away. Defendant Smith states Plaintiff grabbed his wrist and attempted to twist away. Defendant Smith asserts that at this point he lifted up on Plaintiff's handcuff chain, which was behind Plaintiff's back, and pushed Plaintiff forward into the ground. Defendants maintain this was a proper procedure to follow for an inmate attempting to escape an officer's control.

Plaintiff claims that from the moment he was handcuffed, Defendant Smith was continuously twisting and pulling his arms into painful positions. Plaintiff claims Defendant Smith hit him on the head with his radio and knocked him to the ground. Plaintiff states Defendant Smith kicked him in the head and collar bone, and Defendant Dekle kept a lookout while Defendant Smith was beating him.

Defendant Smith radioed for the prison's Correctional Emergency Response Team ("CERT") to assist in escorting Plaintiff to medical. Once the CERT officers arrived on the scene, Defendant Smith and the CERT officers escorted Plaintiff to the medical department. When Plaintiff arrived at the medical department, he was treated by the medical staff and a Use of Force Assessment was performed. At the time of his assessment, Plaintiff complained that he had been hit and had a nose bleed.

The medical staff at Georgia State Prison observed that Plaintiff was alert and conscious during his examination. After the examination, Defendant Smith and two CERT officers escorted Plaintiff to his cell. On November 13, 2009, Plaintiff presented to the medical department at Georgia State Prison complaining of a broken collar bone and a fractured skull. Plaintiff received x-rays for his left shoulder, left collarbone, chest,

ribs and skull. Subsequent examinations revealed Plaintiff had a proximal left sternoclavicale fracture.

Defendants assert their actions did not violate the Eighth Amendment, and that they are entitled to qualified immunity.

## STANDARD OF DETERMINATION

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., ___ F. Supp.2d ___, 2011 WL 589830, at *2 (M.D. Fla. Feb. 18, 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to

prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORITY

### I. Eighth Amendment Claim

The Eighth Amendment's proscription of cruel and unusual punishment governs prison officials' use of force against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). "After incarceration, only the 'unnecessary and wanton infliction of pain'. . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). "To establish an Eighth Amendment claim for excessive force . . . Plaintiff . . . must prove that 'force was applied . . . maliciously and sadistically for the very purpose of causing harm.'" Id. (citing Whitley, 475 U.S. at 320-21). "Force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary." Id. "[W]hether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 321-22 (citing Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973)).

There are five distinct factors relevant to determining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need

AO 72A
(Rev. 8/82)

4

and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Id. at 321. "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008).

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Id. at 322.

Defendants assert there is no genuine dispute about a material fact concerning whether Plaintiff was subject to excessive force. Defendants rely on their assertions that the use of force on Plaintiff was necessary because he was allegedly acting insubordinate. Defendants contention turns on whether Plaintiff was, in fact, acting in the manner they claim. Plaintiff maintains he was acting in an orderly manner and that Defendant Smith attacked him without provocation while Defendant Dekle watched. The choice of whose version of facts to take as true is a decision for the jury—not this court. Questions of fact remain as to whether Defendants violated Plaintiff's Eighth Amendment rights.

## II. Qualified Immunity

The law governing whether government officials are entitled to qualified immunity is well-established in the Eleventh Circuit. Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long

as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1185 n. 17 (11th Cir.1994). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001)[1]; Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

If true, Plaintiff's allegations establish a violation of his constitutional right to be free from cruel and unusual punishment. Plaintiff claims Defendant Smith attacked him without provocation, causing his injuries, and that Defendant Dekle failed to intervene to stop the assault. Plaintiff's allegations, if true, establish a constitutional violation, and the right to be free from said action was clearly established. Defendants should not be entitled to qualified immunity.

---

[1] In Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (2009), the Supreme Court held that lower courts can exercise "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 25th day of March, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE