FILED
2011 NOV 18 AM 9:30
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WINSTON HAYLES,

    Plaintiff,

v.                                CIVIL ACTION NO.: CV610-031

DON JARRIEL; TARMARSHE SMITH;
KAREN DEKLE; CASSANDRA
HOWER; and BARRY SMITH, M.D.,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Augusta State Medical Prison in Grovetown, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at Georgia State Prison in Reidsville, Georgia. Defendants Hower and Jarriel and Defendant Barry Smith ("Movants") filed separate Motions for Summary Judgment. Plaintiff filed a Response to both of these Motions, and Defendants Hower and Jarriel filed a Reply. For the reasons which follow, Defendants Hower's and Jarriel's Motion should be **GRANTED** and Defendant Barry Smith's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff alleges that Tarmarshe Smith told another inmate to put on a chemical floor stripper but did not open any windows for ventilation. Plaintiff asserts that he suffers from asthma and could not breathe because of the fumes and called for help.

AO 72A
(Rev. 8/82)

Plaintiff contends that Tarmarshe Smith escorted him to medical and tightly handcuffed Plaintiff. Plaintiff alleges that he told Tarmarshe Smith that he had broken his arm previously and asked him to loosen the handcuffs. Instead of loosening the handcuffs, Plaintiff asserts Tarmarshe Smith assaulted him, resulting in a "busted" head, a broken collarbone, an injury to his neck, and he was knocked unconscious. (Doc. No. 1, p. 5). Plaintiff asserts that Defendant Barry Smith, M.D., and Defendant Hower, a nurse, did not provide proper treatment for his injuries. Plaintiff contends that Defendant Jarriel, the Warden, is responsible for the constitutional violations his subordinates committed.

Movants contend that Plaintiff's deliberate indifference claims against them should be dismissed. Movants also contend that they are entitled to qualified immunity.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).

AO 72A
(Rev. 8/82)

Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORTY

### I. Deliberate Indifference to Medical Needs[1]

Defendant Hower asserts that she examined Plaintiff on one (1) occasion, December 7, 2009. Defendant Hower asserts that she examined Plaintiff after he complained about pain in his collarbone, and, upon examination, Defendant Hower noticed an obvious deformity of Plaintiff's left collarbone and a decreased range of motion. Defendant Hower contends that she consulted with the staff physician, who prescribed 800 mg Motrin for any pain and swelling Plaintiff may have had. According to Defendant Hower, the staff physician did not feel Plaintiff needed urgent or emergency treatment at the time, as Plaintiff already had x-rays of his shoulder and

---

[1] Even though Defendants Hower and Barry Smith filed separate Motions, the undersigned discusses Plaintiff's deliberate indifference to his serious medical needs claims in one section, as the same law is applicable to both Motions.

AO 72A
(Rev. 8/82)

collarbone area which were negative. Defendant Hower avers that she told Plaintiff to apply a cool compress to the area and avoid any muscle building exercises. Defendant Hower states that Plaintiff was scheduled to be transferred to Hays State Prison on the same day she examined him, so she made sure to alert the intake nurse at Hays State Prison about Plaintiff's collarbone and requested that the doctor at Hays State Prison examine his collarbone. Defendant Hower contends that, other than this one sick call request, she did not receive any other sick call requests from Plaintiff from November 10, 2009, until he was transferred to Hays State Prison. Defendant Hower asserts that Plaintiff was examined and treated for his alleged injuries by other medical personnel at Georgia State Prison, as well as by staff at Doctors Hospital of Tattnall on several occasions during this time period.

Defendant Barry Smith, who is a radiologist, contends that he played a limited role in Plaintiff's care and treatment. Defendant Barry Smith asserts that he was one of several radiologists who reviewed Plaintiff's imaging studies and reached the conclusion that these studies did not show an identifiable injury. Defendant Barry Smith also asserts that Plaintiff's contention that he should have examined Plaintiff is without merit because Defendant Barry Smith was over 100 miles away from the prison when he read Plaintiff's imaging studies via teleradiology, and personal examinations were not within the scope of his duties and he is without privileges at Georgia State Prison or Doctors Hospital of Tattnall.

Plaintiff asserts that he did not receive medical attention for several days despite numerous telephone calls from his family and medical requests from him. Plaintiff contends that he was seen by a nurse, Burt Lanier, but he was not able to see a doctor

AO 72A
(Rev. 8/82)

while he was housed at Georgia State Prison. Plaintiff alleges that Defendant Hower knew of his serious medical needs and delayed or denied his medical treatment. Plaintiff contends that, between November 10 and December 7, 2009, he submitted nine (9) medical requests seeking immediate medical treatment, and only two (2) of these requests were answered. Plaintiff asserts that Defendant Hower was aware that his collarbone was obviously injured and that he had severe pain, but she disregarded his serious medical needs. Plaintiff also asserts that Defendant Hower failed to bring his injuries to a doctor's attention or ensure that he be seen by a bone specialist.

As for Defendant Barry Smith, Plaintiff contends that said Defendant received x-rays of his injuries, which showed head trauma and other injuries, yet he claims Plaintiff was not injured. Plaintiff also contends that Defendant Barry Smith failed to recommend that Plaintiff have another set of x-rays taken or any other follow up treatment or that Plaintiff be seen by a specialist. Plaintiff asserts that Defendant Barry Smith knew of his serious medical needs and failed to take appropriate action.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. In addition, it is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (noting that a mere difference of opinion as to a prisoner's

AO 72A
(Rev. 8/82)

diagnosis or course of treatment does not support a claim under the Eighth Amendment).

A review of the relevant supporting documentation reveals that Plaintiff fails to overcome his burden of establishing a genuine dispute as to any material fact regarding his deliberate indifference to serious medical needs claims. In fact, this documentation reveals that Plaintiff's opinions differ as to the course of treatment staff at Georgia State Prison chose to follow with him. For instance, Nurse Burt Lanier assessed Plaintiff after the use of force incident on November 10, 2009, and noted that Plaintiff was bleeding from his nose and noted no other visible injury. Plaintiff was directed to apply ice to his nose and to follow up with medical if necessary. (Doc. No. 125-11, pp. 2-3). Three (3) days later, Nurse Lanier examined Plaintiff and noticed a deformity to Plaintiff's collarbone; Nurse Lanier consulted with Dr. Dean Broome, who ordered x-rays to be taken at the Doctors Hospital of Tattnall emergency room. Nurse Ann Underwood also saw Plaintiff later that day, and, on November 16, 2009, she noted that Plaintiff was to have a referral on an urgent basis. Plaintiff was given medication for his pain. (Doc. No. 125-8, p. 4; Doc. No. 125-11, pp. 4-5). Plaintiff was taken to the Doctors Hospital of Tattnall on November 13, 2009, and the x-rays taken did not reveal any abnormalities in Defendant Barry Smith's opinion. (Doc. No. 125-11, pp. 6-11). Defendant Barry Smith declares that he was only asked to interpret x-rays teleradiologically[2] taken by a radiology technician at Georgia State Prison and was not given Plaintiff's clinical history. Defendant Barry Smith also declares that he could not conduct a physical evaluation of Plaintiff on November 17, 2009, as he was in Warner Robins, Georgia, at the time, and

---

[2] Defendant Barry Smith states that he was in Warner Robins, Georgia, when he reviewed Plaintiff's x-rays. (Doc. No. 129-1, p. 2).

doing such an evaluation was not part of his responsibilities as a radiologist. (Doc. No. 129-1, p. 2). On November 23, 2009, in response to a Health Services Request Form, Defendant Hower noted that Plaintiff was seen by medical on November 13, 2009, and medication was ordered. (Doc. No. 141-3, p. 3). In response to a Health Services Request Form dated December 1, 2009, Defendant Hower noted on December 7, 2009, that Plaintiff had another x-ray of his collarbone, which was negative, that Motrin was ordered per Doctor Broome, and that Plaintiff was being referred to another facility. (Id. at p. 4; Doc. No. 125-11, p. 13). Defendant Hower directed Plaintiff to apply a cool compress, take his medication with food, and to avoid any muscle building exercises. (Id.). Defendant Hower advised that the doctor at Plaintiff's next penal institution should examine Plaintiff's collarbone and that the x-ray was negative but there was an obvious deformity. (Id. at p. 14).

The evidence before the Court indicates that Plaintiff was seen on several occasions by medical personnel at Georgia State Prison from November 10, 2009, until his transfer to Hays State Prison on December 7, 2009. Plaintiff even went to an outside facility for medical procedures. It is evident that Plaintiff believes something more or different should have been done while he was housed at Georgia State Prison, but this belief is an insufficient basis to support claims that Defendants Hower and Barry Smith were deliberately indifferent to Plaintiff's serious medical needs.[3] These portions of Defendant Hower's and Defendant Barry Smith's Motions should be granted.

---

[3] To the extent Plaintiff contends that his medical treatment was delayed and that delay constitutes deliberate indifference, this claim must fail, too. The undersigned notes that staff at Hays State Prison recommended that Plaintiff be seen by a surgeon for a possible repair of his collarbone (Doc. No. 141-3, pp. 17-21), but there is no evidence which creates a genuine dispute as to whether a perceived delay in "proper" treatment by Defendants Hower and Barry Smith resulted in deliberate indifference. In fact, Plaintiff stated during his deposition that his collarbone "healed on its own." (Doc. No. 125-13, p. 57).

AO 72A
(Rev. 8/82)

## II. Defendant Jarriel

Defendant Jarriel avers that, on November 10, 2009, he had no reason to believe that Tarmarshe Smith was a danger to Plaintiff (or any other inmate) or that Tarmarshe Smith was unqualified, untrained, or ill-equipped to perform his duties as a corrections officer. Defendant Jarriel contends that an incident report was prepared and the use-of-force incident was investigated. Defendant Jarriel also contends that, after speaking with Plaintiff's family members, medical staff at Georgia State Prison "assured" him that Plaintiff had been examined and was not seriously injured as a result of the use of force. (Doc. No. 125-2, p. 5). Even so, Defendant Jarriel alleges, he arranged for Plaintiff to be treated at the Doctors Hospital of Tattnall. Thus, Defendant Jarriel maintains, he was not deliberately indifferent to Plaintiff's medical needs, nor did he fail to protect Plaintiff from a known risk to his safety.

Plaintiff asserts that Defendant Jarriel is liable because, as Warden, he failed to remedy the constitutional violations he suffered at the hands of Tarmarshe Smith. Plaintiff contends that Defendant Jarriel had constructive notice of the uses of excessive force by Tarmarshe Smith and failed to protect Plaintiff from him. Plaintiff also contends that Defendant Jarriel established policies and customs which "caused a history of widespread abuse and guards (sic) brutality on inmates which caused severe and permanent injuries to Plaintiff[.]" (Doc. No. 141-1, p. 6). Plaintiff avers that Defendant Jarriel either failed or refused to verify Plaintiff's medical condition for several days, and Defendant Jarriel lied about and denied any knowledge of his medical condition when his family members called.

In section 1983 actions, liability must be based on something more than a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, No. 11-10104, 2011 WL 3585815, at *8 (11th Cir. Aug. 16, 2011). A "causal connection" may be established when the supervisor is well aware of a "history of widespread abuse" and fails to correct the alleged violations. Bryant, 575 F.3d at 1299. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id. at 1299-1300.

Defendant Jarriel states in his Affidavit that he learned of the incident between Plaintiff and Tarmarshe Smith, and an incident report was prepared. After investigation, Defendant Jarriel determined that Tarmarshe Smith's use of force against Plaintiff was justified. However, due to concerns expressed to him by Plaintiff's family, Defendant Jarriel made a formal request for investigation of the use of force incident involving

AO 72A
(Rev. 8/82)

Plaintiff and Tarmarshe Smith. Defendant Jarriel also states that he was not aware of any "substantiated instances" of Tarmarshe Smith using excessive or inappropriate force against inmates at Georgia State Prison on or before November 10, 2009, and there is nothing in Tarmarshe Smith's personnel file indicating such instances. (Doc. No. 125-4, p. 6). Defendant Jarriel also states that Tarmarshe Smith was trained and certified to be a correctional officer pursuant to Peace Officers Standards Training (POST) criteria, which includes training on the proper application of hands-on force. Defendant Jarriel declares that he contacted the medical department at Georgia State Prison after speaking with Plaintiff's family, and he was assured that Plaintiff had been examined and was not "seriously injured" because of the use of force incident. (Id. at p. 5). Defendant Jarriel states that, even though all medical decisions are within the medical staff's and the Health Services Administrator's purviews, he arranged for Plaintiff to be taken to the Doctors Hospital of Tattnall for treatment three (3) days after the use of force incident.

Through his supporting documentation, Plaintiff fails to establish that there are genuine disputes as to any material fact regarding his claims that Defendant Jarriel was deliberately indifferent to his safety and serious medical needs. In fact, the evidence before the Court reveals that Plaintiff seeks to hold Defendant Jarriel liable based solely on his position as Warden. Specifically, Plaintiff's Affidavit reveals nothing more than conclusory allegations that Defendant Jarriel knew of a history of widespread abuse among correctional officers at Georgia State Prison and that Tarmarshe Smith "is one of the main prison guard[s] who constantly abuse inmates[.]" (Doc. No. 141-2, p. 3). In addition, the documents Plaintiff submitted in support of his assertion that Tarmarshe

11

AO 72A
(Rev. 8/82)

Smith had a history of excessive use of force incidents pre-date Defendant Jarriel becoming Warden at Georgia State Prison by several years, and these documents only show two (2) other inmates' accounts of alleged excessive use of force incidents. (Id. at pp. 17-23). Moreover, during his deposition, Plaintiff merely underscored his desire to hold Defendant Jarriel liable for Tarmarshe Smith's actions and the alleged lack of medical treatment based on Defendant Jarriel's position as Warden. (Doc. No. 125-12, p. 75-Doc. No. 125-13, pp. 1-9; Doc. No. 125-13, pp. 21-30). This is hardly sufficient to rise to the level of deliberate indifference on Defendant Jarriel's part. This portion of Movants' Motions should be granted.

It is unnecessary to address the remaining grounds of the Movants' Motions.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Motion for Summary Judgment filed by Defendants Hower and Jarriel and the Motion for Summary Judgment filed by Defendant Barry Smith be **GRANTED** and that Plaintiff's claims against Defendants Hower, Jarriel, and Barry Smith be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 18th day of November, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)